## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH TROUP, Derivatively on Behalf of Nominal Defendant 22ND CENTURY GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> NORA SULLIVAN, JAMES MISH, MICHAEL KOGANOV, ANTHONY JOHNSON, RICHARD SANDERS, LUCILLE SALHANY, ANDY ARNO, JAMES W. CORNELL, HENRY SICIGNANO, III, and JOHN T. BRODFUEHRER, <br><br> Defendants, <br><br> and <br><br> 22ND CENTURY GROUP, INC., <br><br> Nominal Defendant. | Case No. 1:23-cv-00916 <br><br> JURY TRIAL DEMANDED |

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Kenneth Troup ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant 22nd Century Group, Inc. ("22nd Century" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers for Defendants' (defined below) breaches of fiduciary duties, unjust enrichment, waste of corporate assets, and violations of Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference

call transcripts and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding 22nd Century, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought on behalf of 22nd Century against certain officers and members of the Company's Board (collectively, the "Individual Defendants") (defined further, *infra*) for, among other things, breaching their fiduciary duties to Company stockholders by intentionally or recklessly making or permitting the dissemination of materially false and misleading statements and omissions from February 18, 2016 through July 31, 2019 (the "Relevant Period") regarding, among other things, an SEC investigation of the Company.

2.       22nd Century is a plant biotechnology company focused on technologies that alter the level of nicotine in tobacco plants and the level of cannabinoids in hemp/cannabis plants through genetic engineering, gene-editing, and modern plant breeding. The Company's primary mission in tobacco is to bring reduced nicotine content tobacco cigarettes to market.

3.      During 2016, the SEC began an investigation into purported weaknesses in the Company's internal accounting practices (the "SEC Investigation"). According to a confidential witness hired to address 22nd Century's accounting weaknesses, who provided information to plaintiffs in the Securities Action ("CW2"), as of February 2019, no notice was ever received indicating the SEC Investigation had concluded.

4.      In connection with the SEC Investigation, the Company retained counsel to represent it and former Chief Financial Officer ("CFO") Defendant John T. Brodfuehrer ("Brodfuehrer"). Brodfuehrer traveled to Washington, D.C. in 2016 to meet with the SEC, and

later told CW2 that he feared he could lose his CPA license or even be imprisoned. Brodfuehrer also told CW2, on multiple occasions in 2017, that he was not comfortable signing 22nd Century's SEC filings because of the improper conduct of the Company's former Chief Executive Officer ("CEO"), Defendant Henry Sicignano, III ("Sicignano"), stating that "people need to save [Sicignano] from himself."

5.      During the Relevant Period, the Company issued numerous public statements about the status of 22nd Century to influence public opinion. In several public SEC filings, the Company disclosed issues with its accounting practices, but failed to disclose the existence of the SEC Investigation.

6.      On October 25, 2018, an article was published on the financial news and analysis website *Seeking Alpha* by a user under the name "Fuzzy Panda" (the "October 2018 Article"). Fuzzy Panda had previously raised questions regarding the Company's technology claims on *Seeking Alpha* and, based on the shared username with a known account on another website, was actually the Company's former CEO, Joseph Pandolfino ("Pandolfino"). The October 2018 Article disclosed a Freedom of Information Act ("FOIA") request to the SEC concerning the Company, and the subsequent denial of that request, suggesting that the SEC had opened investigations into the Company, including for its involvement in a potential pump and dump scheme.

7.      In response to the October 2018 Article and subsequent articles published by the same author, the Company published press releases denying any knowledge of any enforcement proceeding against 22nd Century by the SEC or any other regulator.

8.      As set forth herein, the Individual Defendants breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct these false and misleading statements and omissions of material fact to the investing public. As a result, the Individual

Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

9.      Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain adequate internal controls.

10.     As a result of the foregoing, a securities fraud class action has commenced against the Company, Sicignano, and Brodfuehrer captioned, *Noto et al v. 22nd Century Group, Inc. et al,* Docket No. 1:19-cv-01285 (W.D.N.Y. Sep 20, 2019) (the "Securities Action"). The Securities Action has exposed the Company to massive class-wide liability.

11.     In light of the Individual Defendant's misconduct—which has subjected the Company to the Securities Action, the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend millions of dollars.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of sections 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

14.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

15.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Nominal Defendant 22nd Century is headquartered in this District and conducts business in this District.

## PARTIES

*Plaintiff*

17.     Plaintiff currently holds shares of 22nd Century common stock and has been a continuous holder at all relevant times.

*Nominal Defendant*

18.     Nominal Defendant 22nd Century is incorporated under the laws of Nevada with its principal executive offices located at 500 Seneca Street, Suite 507, Buffalo, New York 14204. 22nd Century's common stock trades on the NASDAQ Capital Market ("NASDAQ") under the ticker symbol "XXII."

*Individual Defendants*

19.     Defendant Nora Sullivan ("Sullivan") has served as a director of the Company since May 2015 and as Chairperson of the Board since January 2020. Sullivan also serves as Chair of the Audit Committee and as a member of the Compensation Committee and Corporate Governance and Nominating Committee. As set forth in the proxy statement filed by 22nd Century with the SEC on April 25, 2023 (the "2023 Proxy"), Sullivan received $308,460 in compensation from the Company in 2022.

20.     Defendant James Mish ("Mish") has served as a member of the Board since January 2022. Mish previously served as the Company's CEO from June 2020 until August 2023.

According to the 2023 Proxy, Mish received $2,762,794 in compensation from the Company in 2022.

21.     Defendant Dr. Michael Koganov ("Koganov") has served as a member of the Board since September 2020. Koganov also serves as Chair of the Company's Scientific Advisory Board and as a member of the Audit Committee and Compensation Committee. According to the 2023 Proxy, Koganov received $218,460 in compensation from the Company in 2022.

22.     Defendant Anthony Johnson ("Johnson") has served as a member of the Board since August 2021. Johnson also serves as Chair of the Corporate Governance and Nominating Committee and as a member of the Audit Committee and the Scientific Advisory Board. According to the 2023 Proxy, Johnson received $218,460 in compensation from the Company in 2022.

23.     Defendant Richard M. Sanders ("Sanders") has served as a member of the Board since December 2013. Sanders also serves as Chair of the Compensation Committee and as a member of the Audit Committee. According to the 2023 Proxy, Sanders received $248,460 in compensation from the Company in 2022.

24.     Defendant Lucille S. Salhany ("Salhany") has served as a member of the Board since September 2022. Salhany and also serves as a member of the Corporate Governance and Nominating Committee and the Compensation Committee. According to the 2023 Proxy, Salhany received $58,454 in compensation from the Company in 2022.

25.     Defendant Andy Arno ("Arno") has served as a member of the Board since July 2023.

26.     Defendant James W. Cornell ("Cornell") has served as a member of the Board from March 2011 until May 2020.

6

27.     Defendant Sicignano served as CEO of the Company from March 2015 until his resignation effective July 26, 2019. Defendant Sicignano is named as a defendant in the Securities Action.

28.      Defendant Brodfuehrer served as the Company's CFO from April 2013 until leaving the role in December 2019 to become the Company's Vice President of Strategy. Defendant Brodfuehrer is named as a defendant in the Securities Action.

29.     Defendants referenced in paragraphs 19 through 28 are herein referred to as the "Individual Defendants."

### FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

30.     By reason of their positions as officers and/or directors of 22nd Century, and because of their ability to control the business and corporate affairs of 22nd Century, the Individual Defendants owed 22nd Century and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage 22nd Century in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of 22nd Century and its shareholders so as to benefit all shareholders equally.

31.     Each director and officer of the Company owes to 22nd Century and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of 22nd Century, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

33.     To discharge their duties, the officers and directors of 22nd Century were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

34.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of 22nd Century, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

35.     As senior executive officer and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

36.     To discharge their duties, the officers and directors of 22nd Century were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of 22nd Century were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of New York and the United States, and pursuant to 22nd Century's own Code of Business Conduct and Corporate Ethics (the "Code of Conduct");

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how 22nd Century conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of 22nd Century and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that 22nd Century's operations would comply with all applicable laws and 22nd Century's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

37.     Each of the Individual Defendants further owed to 22nd Century and the shareholders the duty of loyalty requiring that each favor 22nd Century's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

38.     At all times relevant hereto, the Individual Defendants were the agents of each other and of 22nd Century and were at all times acting within the course and scope of such agency.

39.     Because of their advisory, executive, managerial, and directorial positions with 22nd Century, each of the Individual Defendants had access to adverse, non-public information about the Company.

40.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by 22nd Century.

## 22ND CENTURY'S CODE OF CONDUCT

41.     22nd Century's Code of Conduct applies to all directors, officers and employees of the Company, collectively referred to as "Covered Parties".

42.     The purpose of the Code of Conduct is to: "(1) emphasize the Company's commitment to ethics and compliance with the law; (2) set forth basic standards of ethical and legal behavior; (3) provide reporting mechanisms for known or suspected ethical or legal violations; and (4) help prevent and detect wrongdoing."

43.     The Code of Conduct provides that Covered Parties, "must all work together to ensure prompt and consistent action against violations of this Code."

44.     If the Board determines that the Code of Conduct has been violated, "either directly, by failure to report a violation, or by withholding information related to a violation," then the offending Covered Party "may be disciplined for non-compliance with penalties up to and including removal from office or dismissal." Such penalties may also include, "written notices to the individual involved that a violation has been determined, censure by the Board of Directors, demotion or re-assignment of the individual involved and suspension with or without pay or benefits."

45.     In a section titled, "Compliance with Laws, Rules and Regulations," the Code of Conduct states:

> Obeying the law, both in letter and in spirit, is the foundation on which the Company's ethical standards are built. In conducting the business of the Company, the Covered Parties shall comply with applicable governmental laws, rules and regulations at all levels of government in the United States and in any non-U.S. jurisdiction in which the Company does business. Although not all Covered Parties are expected to know the details of these laws, it is important to know enough about the applicable local, state and national laws to determine when to seek advice from supervisors, managers or other appropriate personnel.

46.     In a section concerning public disclosures, the Code of Conduct states:

> In reports and documents filed with or submitted to the Securities and Exchange Commission and other regulators by the Company, and in other public communications made by the Company, the Covered Parties involved in the preparation of such reports and documents (including those who are involved in the preparation of financial or other reports and the information included in such

reports and documents) shall make disclosures that are full, fair, accurate, timely and understandable. Where applicable, these Covered Parties shall provide thorough and accurate financial and accounting data for inclusion in such disclosures. They shall not knowingly conceal or falsify information, misrepresent material facts or omit material facts necessary to avoid misleading the Company's independent public auditors or investors.

## 22ND CENTURY'S AUDIT COMMITTEE CHARTER

47.     22nd Century maintains an Audit Committee Charter, as amended and restated

March 6, 2023, which states that he purpose of the Audit Committee is to:

> [O]versee the accounting and financial reporting processes of the Company and to assist the Board in monitoring (a) the integrity of the financial statements of the Company, (b)  the independent registered public accounting firm ("independent auditors") qualifications, performance and independence, (c) the performance of the Company's internal audit function and independent auditors, and (d) the Company's compliance with legal and regulatory requirements.

48.     With respect to financial statement and disclosure matters, the Audit Committee

Charter states that the Audit Committee's responsibilities include, among other things:

- Review and discuss with management and the independent auditor the annual audited financial statements, including disclosures made in management's discussion and analysis, consider whether they are consistent with the information known to Committee members, and recommend to the Board whether the audited financial statements should be included in the Company's Annual Report on Form 10-K.
- Review and discuss with management and the independent auditor the Company's quarterly financial statements prior to the filing of its Form 10-Q, including disclosures made in management's discussion and analysis and the results of the independent auditor's reviews of quarterly financial statements.
- Review and discuss with management and the independent auditor significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including any significant changes in the Company's selection or application of accounting principles.
- In consultation with management, the independent auditors, and the internal auditors (or outsourced internal auditors), the Committee shall review and consider the adequacy and integrity of the Company's financial reporting processes and internal control over financial reporting.

*               *               *.

12

- Discuss with management the Company's earnings press releases, including the use of "pro forma" or "adjusted" non-GAAP information, as well as financial information and earnings guidance provided to investors, analysts, and rating agencies. Such discussion may be done generally (consisting of discussing the types of information to be disclosed and the types of presentations to be made), and each earnings release or each instance in which the Company provides earnings guidance need not be discussed in advance.
- Discuss with management and the independent auditor the effect of regulatory and accounting initiatives and the impact on the Company's financial statements.
- Discuss with management the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures, including the Company's risk assessment and risk management policies.

*       *       *

- Review disclosures made to the Committee by the Company's CEO and CFO during their certification process for the Form 10-K and Form 10-Q about any significant deficiencies in the design or operation of internal controls or material weaknesses therein and any fraud involving management or other employees who have a significant role in the Company's internal controls.
- As and when required by SEC regulations, the Committee shall obtain, on a quarterly basis, reports from the Company's management regarding its evaluation of the Company's disclosure controls and procedures and internal control over financial reporting.
- As and when required by SEC regulations, the Committee shall obtain, on an annual basis, the independent auditors' attestation report on management's assessment of the Company's internal control over financial reporting.

*       *       *

49.     With respect to compliance oversight, the Audit Committee Charter states that the

Audit Committee's responsibilities include:

- Obtain reports from management, the Company's internal audit lead, and the independent auditor confirming the Company is in conformity with applicable legal requirements and the Company's Code of Business Conduct and Ethics. Advise the Board with respect to the Company's policies and procedures regarding compliance with applicable laws and regulations.
- Review ethics hotline activity or complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and the confidential, anonymous submission by employees of concerns

13

regarding questionable accounting or auditing matters.

- Discuss with management and the independent auditor any correspondence with regulators or governmental agencies and any published reports that raise material issues regarding the Company's financial statements or accounting policies.
- Review and oversee all related-party transactions in accordance with the Company's Policies and Procedures with respect to Related Party Transactions.
- Review reports and disclosures of insider and affiliated party transactions.

## **SUBSTANTIVE ALLEGATIONS**

### *Background*

50. On February 18, 2016, the Company filed its annual report on Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2015 (the "2015 10-K"). The 2015 10-K was signed by Defendants Sicignano and Brodfuehrer.

51. The 2015 10-K disclosed that the Company's management had concluded that its "internal controls over financial reporting were not effective and that material weaknesses exist[ed] in [its] internal control over financial reporting" as it related to segregation of duties. To ameliorate these weaknesses, the Company hired an accounting manager, CW2, to report directly to Brodfuehrer.

52. In its quarterly reports on SEC Forms 10-Q for the first, second, and third quarters of 2016, as well as its annual report on SEC Form 10-K for 2016, the Company repeated that its financial reporting controls and procedures were not effective and noted that it was undertaking remediation efforts.

53. Ultimately, in its Form 10-Q for the second quarter of 2018, filed August 9, 2018, the Company disclosed that "[d]uring the second quarter of 2016, we hired an additional accounting employee to assist with remediating our material weakness associated with a lack of segregation of duties." The Company further stated that it had "completed the implementation and

testing of a remediation plan that was targeted at eliminating our previously reported material weakness in our internal controls over financial reporting primarily resulting from a lack of segregation of duties."

54.     Although the Company disclosed the material weakness in its accounting controls, it failed to disclose that it was being investigated by the SEC in connection with material weaknesses at the Company. The SEC Investigation was already under way by the time CW2 was hired and continued throughout at least 2019. CW2 stated that they never saw any statement from the SEC formally closing the investigation.[1]

55.     In fact, the SEC Investigation was so serious that the Company retained counsel to represent it and potentially Brodfuehrer in the investigation. According to CW2, Brodfuehrer traveled to Washington, D.C., in 2016 to meet with the SEC. Brodfuehrer told CW2 that he feared he could lose his CPA license or even be imprisoned.

56.     On February 26, 2019, CW2, whose health had declined, was abruptly fired by Brodfuehrer. For a period of several weeks after terminating CW2, 22nd Century operated without an Accounting Manager and therefore its accounting controls suffered from material weaknesses.

57.     In addition to failing to disclose this continued material weakness and the existence of the SEC Investigation, the Company's annual report filed with the SEC on Form 10-K, filed on March 6, 2019, was certified by Defendants Sicignano and Brodfuehrer that they had disclosed "to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing equivalent functions) . . . . All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting."

_____

[1] CW2's employment with the Company ended in February 2019.

15

58.     These materially omissions caused the price of 22nd Century stock to trade at artificially inflated prices throughout the Relevant Period, ultimately causing investors to suffer millions of dollars in losses when the truth was revealed.

59.     In fact, the Company took advantage of this inflated price by executing multiple stock offerings to raise cash at the cost of diluting the interests of existing shareholders. On July 27, 2016, for instance, the Company closed a registered direct offering of common stock and warrants consisting of 6,172,840 shares of the Company's common stock and warrants to purchase 7,043,211 shares of the Company's common stock.

60.     On October 19, 2016, 22nd Century sold 8,500,000 shares of the Company's common stock and warrants to purchase 4,250,000 shares of the Company's common stock at an exercise price of $1.45 per share. The common stock and warrants were sold for $1.3425 per unit, resulting in net proceeds to the Company in the amount of $10,707,823.

***Materially False and Misleading Statements***

61.     On February 18, 2016, the Company filed the 2015 10-K with the SEC. The 2015 10-K disclosed:

> [O]ur management concluded that as of December 31, 2015, that our internal controls over financial reporting were not effective and that material weaknesses exist in our internal control over financial reporting. The material weakness consists of controls associated with segregation of duties whereby individuals have incompatible duties within the financial reporting area. To address the material weakness we performed additional analyses and other post-closing procedures to ensure that our consolidated financial statements were prepared in accordance with accounting principles generally accepted in the United States of America (U.S. GAAP).

62.     On May 10, 2016, the Company filed its quarterly report for the first quarter 2016 on Form 10-Q with the SEC (the "1Q16 10-Q"), stating, in relevant part:

> [O]ur chief executive officer and chief financial officer, after evaluating the effectiveness of the Company's "disclosure controls and procedures" (as defined in

the Exchange Act Rules 13a-15(e) or 15d-15(e)) as of the end of the period covered by this quarterly report, have concluded that our disclosure controls and procedures were not effective and that material weaknesses described in our Form 10-K for the year ended December 31, 2015 exist in our internal control over financial reporting based on their evaluation of these controls and procedures as required by paragraph (b) of Exchange Act Rules 13a-15 or 15d-15.

63.     The Company filed its quarterly report for the second quarter of 2016 on Form 10-Q with the SEC on August 9, 2016 (the "2Q16 10-Q"), disclosing that:

> During the second quarter of 2016, we hired an additional accounting employee to assist with remediating our material weakness associated with a lack of segregation of duties. In addition, subsequent to the end of the second quarter of 2016, we engaged a third-party consultant to assist with material weakness remediation and to assist with our controls and procedures over our financial reporting. Except as set forth herein, there were no changes in the Company's internal control over financial reporting during the second quarter of 2016 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

64.     On November 8, 2016, the Company filed its quarterly report for the third quarter of 2016 on Form 10-Q with the SEC (the "3Q16 10-Q"), stating, in relevant part:

> During the third quarter of 2016, an additional accounting employee hired during the second quarter of 2016 was fully deployed and with the assistance of a third-party consultant, we developed and commenced the implementation of a remediation plan targeted at eliminating our previously reported material weakness in our internal controls over financial reporting primarily resulting from a lack of segregation of duties. Except as set forth herein, there were no changes in the Company's internal controls over financial reporting during the third quarter of 2016 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

65.     On March 8, 2017, the Company filed its annual report for the year ended December 31, 2016 on Form 10-K with the SEC (the "2016 10-K"), disclosing that:

> During the fourth quarter of 2016, we completed the implementation and testing of a remediation plan that was targeted at eliminating our previously reported material weakness in our internal controls over financial reporting primarily resulting from a lack of segregation of duties. Except as set forth herein, there were no changes in the Company's internal controls over financial reporting during the fourth quarter of 2016 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

66.     In each of the above statements contained in the Company's SEC filings, Defendants disclosed that issues existed with 22nd Century's accounting practices, but failed to disclose the existence, let alone any details, of the SEC Investigation.

***The Truth Begins to Emerge***

67.     The truth began to emerge when, on July 16, 2018, a nonpublic FOIA request was submitted seeking "all documents in the possession of the SEC pertaining to investigations regarding 22nd Century Group (XXII) for the time period January 1, 2016 through July 16, 2018." On August 13, 2018, a FOIA officer denied the request pursuant to FOIA Exemption (b)(7)(A) ("Exemption 7(A)"). Exemption (b)(7)(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."

68.     On September 14, 2018, the denial was appealed to the SEC's Office of the General Counsel. On September 21, 2018, the SEC Office of the General Counsel denied the appeal, stating that it had confirmed that "releasing the withheld information could reasonably be expected to interfere with on-going enforcement proceedings."

69.     On October 25, 2018, Fuzzy Panda published the October 2018 Article to *Seeking Alpha*. The October 2018 Article disclosed the FOIA request and its subsequent denial, suggesting that the SEC had opened investigations into the Company, including for its involvement in a potential pump and dump scheme.

70.     Following the release of the October 2018 Article, the Company's stock price fell $0.11, or 4.3%, to close at $2.45 per share on October 25, 2018.

71.    In response, on October 26, 2018, the Company issued a press release entitled, "22nd Century Group Comments on Grossly Misleading 'Short and Distort' Article" (the "October 2018 Response"). The October 2018 Response characterized the October 2018 Article as a "highly deceptive article published . . . by a self-professed short seller of the Company's stock who launched his smear campaign in an effort to dupe shareholders into selling their shares of 22nd Century Group stock." The October 2018 Response did not disclose that the Company had known for months that former 22nd Century CEO Joe Pandolfino was the author behind the Fuzzy Panda username. Instead, Sicignano stated that, "[t]hough the author of the 'short and distort' article on 22nd Century failed to disclose his own name, the Company plans to notify the SEC of the article, of all persons associated with it, and of their intent to deceive 22nd Century's shareholders."

72.    The October 2018 Response misleadingly stated that "22nd Century has not received any notice of, and the Company has no knowledge of, any enforcement proceeding against 22nd Century by the SEC or any other regulator." The October 2018 Response concluded with Sicignano stating that "[b]y persuading unsophisticated shareholders that something is amiss, unscrupulous short sellers are essentially stealing from ordinary investors. We hope that the SEC will punish such wrongful behavior. In the meantime, we have a business to run and a mission to execute. We will not respond to any further short seller articles."

73.    On April 17, 2019, Fuzzy Panda posted another article to *Seeking Alpha* concerning 22nd Century entitled, "22nd Century: Key Patents Behind MRTP and PMTA Applications Have Expired!" (the "April 2019 Article"). The April 2019 Article alleged, among other things, that the Company's key patents behind the tobacco used in its applications to the U.S. Food and Drug Administration ("FDA") had begun expiring in 2018. The April 2019 Article further alleged that the so-called "Big Tobacco" manufacturers now had the ability to manufacture low-nicotine

tobacco products that would adhere to applicable FDA standards.

74.    Following the release of the April 2019 Article, the Company's stock price fell 1.6%, to close at $1.89 per share on April 17, 2019.

75.    On April 18, 2019, the Company issued a response to the April 2019 Article (the "April 2019 Response") stating that "the self-serving 'hit piece' article falsely alleges that 22nd Century is supposedly under SEC investigation. As 22nd Century has publicly stated on several occasions, 22nd Century has not received any notice of, and the Company had no knowledge of, any enforcement proceeding against 22nd Century by the SEC or any other regulator."

76.    The April 2019 Response, like the October 2018 Response, was false and misleading in that it failed to disclose that 22nd Century had been, and may still be, subject to at least one SEC investigation in connection with the material weakness disclosed in its accounting protocols.

***Harm to the Company***

77.    As a direct and proximate result of the Individual Defendants' misconduct, 22nd Century has lost and expended, and will lose and expend, millions of dollars.

78.    Such expenditures include, but are not limited to, legal fees associated with the Securities Action filed against the Company and its former CEO and CFO, including any amounts paid to outside lawyers, accountants, and investigators in connection thereto.

79.    Such expenditures also include, but are not limited to, the cost of implementing measures to remediate the material weaknesses in the Company's internal control over financial reporting.

80.    Such losses also include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company,

including bonuses tied to the Company's attainment of certain objectives, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

81.    On January 14, 2021, the District Court in the Securities Action (the "District Court") granted defendants' motion to dismiss the action in its entirety.

82.    On May 24, 2022, the United States Circuit Court for the Second Circuit affirmed in part, vacated in part, and remanded remaining claims to the District Court (Securities Action, ECF No. 58). In particular, the Second Circuit vacated the dismissal of those plaintiffs' 10b-5(b) material representation claims, holding that defendants had a duty to disclose the SEC Investigation because they addressed their accounting weaknesses in their 10-K's and 10-Q's and, therefore, disclosing the SEC Investigation was necessary "to tell the whole truth." *Id*.

83.    The Second Circuit concluded that "the complaint adequately alleged that defendants violated Rule 10b-5(b) both by first omitting mention of the SEC Investigation and then by affirmatively denying its existence." *Id*. The Second Circuit further noted that the existence of the SEC Investigation was material, finding that "the existence of an SEC investigation related to the accounting weaknesses was material information that a reasonable investor would have wanted to know... By not disclosing that the SEC was investigating the Company's specific accounting weaknesses, defendants' statements about that weakness were not accurate and complete." *Id*. at 16.

84.    On January 6, 2023, the District Court denied defendants' renewed motion to dismiss, concluding that the Second Circuit vacated the dismissal of all 10b-5(b) claims based on the non-disclosure of, and false statements regarding, the SEC Investigation. (Securities Action, ECF No. 69). The District Court further found that plaintiffs in the Securities Action sufficiently allege scienter and loss causation for their 10b-5(b) claims, as well as their Section 20(a) claims.

*Id*. at 11.

85.     On June 30, 2023, the District Court granted the Securities Action parties' motion for preliminary approval of class action settlement. (Securities Action, ECF No. 86). Pursuant to the settlement, the Securities Action defendants agreed to make a payment of $3 million for the benefit of the settlement class.

86.     As a direct and proximate result of the Individual Defendants' conduct, 22nd Century has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE AND DEMAND REFUSED ALLEGATIONS

87.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

88.     22nd Century is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

89.     Plaintiff is an owner of 22nd Century common stock and has been a continuous shareholder of Company stock at all relevant times.

90.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

91.     At the time this action was commenced, the Board consisted of Defendants Sullivan, Mish, Koganov, Johnson, Sanders, Salhany, and Arno. These Defendants are neither

independent nor disinterested for the reasons set forth herein and below.

92.     The Individual Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

93.     The Individual Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein.

94.     Additionally, the Individual Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

95.     Moreover, the Individual Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

96.     Nevertheless, on April 19, 2023, Plaintiff made a demand on the Board to investigate and remedy the violations of law described herein (the "Litigation Demand").  *See* Exhibit A.

97.     In the Litigation Demand, Plaintiff demanded as follows:

The Stockholder demands that the Board initiate and complete an investigation into and commence legal proceedings against certain of the Company's former officers and current directors for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, breach of fiduciary duty, aiding and abetting thereof, waste of corporate assets, unjust enrichment, and violations of all other applicable laws, rules, and regulations related to the wrongdoing alleged in this Demand. Such investigation must cover not only the facts cited herein but any other

credible indication of misconduct by the Board and 22nd Century's executives and employees concerning false and misleading statements made during the Relevant Period. This investigation must be conducted by independent and disinterested Board members with the assistance of independent outside legal counsel and other advisors, as needed.

The Stockholder demands that the Company commence legal proceedings against each party identified as being responsible for the misconduct identified by the independent investigation. Such legal proceedings must seek to have each wrongdoer jointly and severally reimburse the Company for the harm they have caused 22nd Century. The legal proceedings shall also seek to recover the salaries, bonuses, director remuneration, and other compensation paid to the responsible individuals. All such litigation must be commenced timely and within applicable statutes of limitations.

98.    In a letter dated May 18, 2023, the Company's counsel responded: "We are in receipt of your April 19, 2023 letter to the Company's Board of Directors and are evaluating the allegations contained therein. The Company will respond in due course once its initial review is complete."

99.    On July 10, 2023, Plaintiff's counsel conferred with the Company's counsel to discuss the Litigation Demand.

100.    On July 18, 2023, the Company's counsel sent an email (the "July 18 Email") to Plaintiff's counsel stating that the Company's review revealed issues with the Litigation Demand and that the Board was separately conducting an independent review. The purported problems with the Litigation Demand that the Company's counsel asserted would "preclude suit, by him or the Company[,]" including that "pending derivative actions render yet another action on the exact same issues wasteful[,]" and that "the limitations period has expired for Mr. Troup's proposed claims."

101.    The July 18 Email further stated that in 2019 and 2020, the Company convened a special committee to look into alleged stock promotion issues raised in the Litigation Demand, and that the committee determined it was not in the Company's interest to bring a claim on those issues.

The July 18 Email attached a copy of minutes from a February 27, 2020 meeting of the Board at which the Board addressed a Special Committee report addressing the stock promotion issues. Following a discussion of the report, the investigation process, and the conclusion and recommendation of the Special Committee, the Board resolved that the Board and officers Sicignano and Brodfuehrer did not violate their fiduciary duties to the Company under Nevada law and did not violate federal securities laws. The Board further resolved that no interest of the Company or its shareholders would be served by the Board bringing an action on behalf of the Company.

102. The July 18 Email, sent 90 days after the Litigation Demand, constitutes an effective refusal of Plaintiff's Demand and an attempt to delay determination of any subsequent action by the Board.

103. The Board has failed to respond to the Litigation Demand and has not evaluated its merits in good faith based on all information reasonably available to it.

104. The Board's failure to respond to Plaintiff's Litigation Demand constitutes a wrongful refusal of the Litigation Demand, is unreasonable and improper, and demonstrates the Board's lack of good faith.

105. Furthermore, on August 14, 2023, parties to a consolidated derivative action in this Court alleging similar claims to this action, captioned *In Re 22nd Century Group, Inc. Derivative Litigation*, Docket No. 1:19-cv-00479 (the "Consolidated Derivative Action"), filed a joint status update informing the Court that the Consolidated Derivative Action parties had attended a mediation on March 21, 2023 and are attempting to reach a final resolution. (Consolidated Derivative Action, ECF No. 25).

106. Accordingly, refusal of the Litigation Demand is not a valid exercise of business

judgment and, therefore, Plaintiff is permitted to proceed and to prosecute this action derivatively on behalf of the Company.

## COUNT I

### Against The Individual Defendants For Violations of § 10(b)
### of the Exchange Act and Rule 10b-5

107.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

108.   The Individual Defendants violated § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

109.   The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

110.   The Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

111.   The Individual Defendants acted with scienter because they (i) knew that the public documents and statements issued or disseminated in the name of 22nd Century were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated

26

to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

112.    The Individual Defendants, by virtue of their receipt of information reflecting the true facts of 22nd Century, their control over, and/or receipt and/or modification of 22nd Century's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning 22nd Century, participated in the fraudulent scheme alleged herein.

113.    As a result of the foregoing, the market price of 22nd Century common stock was artificially inflated. In ignorance of the falsity of the statements, stockholders relied on the statements described above and/or the integrity of the market price of 22nd Century common stock in purchasing 22nd Century common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

114.    Likewise, as a result of the wrongful conduct alleged herein, the Company has also suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Action and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Action.

## COUNT II

### Against The Individual Defendants
### For Breach Of Fiduciary Duty

115.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.    The Individual Defendants owe the Company fiduciary obligations. By reason of

their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, candor, loyalty, and due care.

117.   The Individual Defendants willfully ignored the obvious deficiencies in the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

118.   The Individual Defendants breached their fiduciary duties of good faith, candor, loyalty, and due care by making and/or authorizing false and misleading statements concerning the Company's business and the adequacy of its internal controls, as well as the existence of the SEC Investigation.

119.   During the Relevant Period, the Individual Defendants intentionally or recklessly made or permitted materially false and misleading statements and omitted material facts concerning the SEC Investigation.

120.   The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

121.   As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

122.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Action, exposing the Company to millions of dollars in class-wide damages in the Securities Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

123.    Plaintiff, on behalf of 22nd Century, has no adequate remedy at law.

## COUNT III

### Against The Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

124.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

126.    Plaintiff on behalf of 22nd Century has no adequate remedy at law.

## COUNT IV

### Against The Individual Defendants for Unjust Enrichment

127.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

128.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, 22nd Century.

129.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from 22nd Century that was tied to the performance or artificially inflated valuation of 22nd Century or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

130.    Plaintiff, as a stockholder and a representative of 22nd Century, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

131.    Plaintiff on behalf of 22nd Century has no adequate remedy at law.

## COUNT V

### Against The Individual Defendants For Waste Of Corporate Assets

132.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

133.    The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of the Company's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by

allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

134.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (a) paying and collecting excessive compensation and bonuses; and (b) incurring millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Action.

135.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

136.    Plaintiff on behalf 22nd Century has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of 22nd Century and that Plaintiff is a proper and adequate representative of the Company;

B.    Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment;

C.    Directing 22nd Century to take all necessary actions to reform and improve its corporate governance and internal procedures to protect 22nd Century and its stockholders from a repeat of the damaging events described herein, including, but not limited to:

- strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

- strengthening the Company's internal reporting and financial disclosure controls;

- developing and implementing procedures for greater shareholder input into

the policies and guidelines of the Board; and

- strengthening the Company's internal operational control functions;

C.     Awarding punitive damages;

D.     Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 1, 2023                    **WEBSTER SZANYI LLP**

                                        By: _____

Of Counsel:                                *Local Attorneys for Plaintiff:*

**RIGRODSKY LAW, P.A.**                     Thomas S. Lane, Esq.
Seth D. Rigrodsky                           424 Main Street, Suite 1400
Timothy J. MacFall                          Buffalo, NY 14202
Vincent A. Licata                           Telephone: (716) 842-2800
825 East Gate Boulevard, Suite 300          Email: tlane@websterszanyi.com
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
        tjm@rl-legal.com
        vl@rl-legal.com

## **VERIFICATION**

I, Kenneth Troup, have reviewed the allegation made in this Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _____ day of August 2023.

8/19/2023

DocuSigned by:

EF897CEBDF664B3

_____

Kenneth Troup